Andrew G. Strickland, CA Bar No. 272364
LEE & HAYES, P.C.
75 14th Street, Suite 2500
Atlanta, GA 30309
Phone: (404) 815-1900
Fax: (404) 817-1700
Andrew.Strickland@leehayes.com

*Attorney for Defendants IntelliArmor
and Adam Anderson*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANHO CORPORATION, a California corporation;<br><br>                    Plaintiffs,<br><br>    v.<br><br>INTELLIARMOR, a California corporation; INTELLIARMOR LLC, a Wyoming limited liability company ADAM ANDERSON, an individual; DOES 1-10<br><br>                    Defendants. | No. 8:20-cv-00735-JLS-DFM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**<br><br>Date: September 4, 2020<br>Time: 10:30 a.m.<br>Room: 10A<br>First Amd. Complaint Filed: 5/18/2020<br>Trial Date: None Set |

1

**TABLE OF CONTENTS**

SUMMARY .................................................................................... 1

STATEMENT OF ISSUES.................................................................. 2

STATEMENT OF FACTS ................................................................. 3

ARGUMENT...................................................................................... 7

    I.     THE COURT SHOULD DISMISS ALL CLAIMS AGAINST ADAM ANDERSON................................................................. 8

    II.    THE COURT SHOULD DISMISS THE '429 PATENT INFRINGEMENT CLAIM ....................................................... 10

    III.   THE COURT SHOULD DISMISS THE 'D616, 'D875, 'D618 and 'D290 PATENT INFRINGEMENT CLAIMS ................... 13

    IV.   THE COURT SHOULD NOT GRANT LEAVE TO AMEND. 15

          A.    Plaintiff Cannot Meet the Good Cause Standard ............. 16

          B.    Even if Plaintiff Could Show Good Cause, Any Future Amendment Would Be Premised on Plaintiff's Wrongful Motive. .......................................................................... 18

CONCLUSION ............................................................................... 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Akamai Technologies, Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) ............................................................ 10

*Al-Site Corporation v. VSI International, Inc.*,
   174 F.3d 1308 (Fed. Cir. 1999) .................................................... 9, 10

*Allen Archery, Inc. v. Browning Manufacturing Co.*,
   819 F.2d 1087 (Fed. Cir. 1987) ......................................................... 21

*Arcona, Inc. v. Farmacy Beauty, LLC*,
   No. 2:17-cv-07058-ODW-JPR, 2018 U.S. Dist. LEXIS 47704
   (C.D. Cal. Mar. 22, 2018) .................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..........................................................7, 8, 11

*Atlas IP, LLC v. Exelon Corp.*,
   189 F. Supp. 3d 768 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC*
   *v. Commonwealth Edison Co.*, 686 F. App'x 921 (Fed. Cir. 2017) ................... 11

*Atlas IP, LLC v. JEA*,
   No. 17-20243-CIV-ALTONAGA/Goodman, 2017 U.S. Dist. LEXIS 96577
   (S.D. Fla. June 21, 2017) .................................................................. 12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................7, 8, 11

*In re Bill of Lading Transmission & Processing Systems Patent Litigation*,
   681 F.3d 1323 (Fed. Cir. 2012) ......................................................... 11

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002) ......................................................... 19

*Chand v. Experian Information Solutions, Inc.*,
   No. 16-cv-6311-YGR, 2017 U.S. Dist. LEXIS 39926
   (N.D. Cal. March 20, 2017) ............................................................. 18

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183, 187 (9th Cir. 1987). ..................................................... 18

*Deckers Outdoor Corp. v. J.C. Penney Co., Inc.*,
   45 F. Supp. 3d 1181 (C.D. Cal. 2014) ............................................................... 14

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) ...................................................................10, 12

*DRK Photo v. McGraw-Hill Global Education Holdings, LLC*,
   870 F.3d 978 (9th Cir. 2017) ............................................................................ 16

*Drone Labs, LLC v. Dedrone Holdings, Inc.*,
   No. 19-cv-01281-EMC, 2019 U.S. Dist. LEXIS 156186
   (N.D. Cal. Sept. 12, 2019) ............................................................................11, 13

*Duncan Parking Technologies, Inc. v. IPS Group, Inc.*,
   914 F.3d 1347 (Fed. Cir. 2019) ........................................................................ 10

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) .......................................................................... 14

*Electronic Scripting Products, Inc. v. HTC America Inc.*,
   No. 17-cv-05806-RS, 2018 U.S. Dist. LEXIS 43687
   (N.D. Cal. Mar. 16, 2018) ................................................................................ 12

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) ............................................................................ 8

*Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.*,
   No. 5:18-cv-2436 DDP, 2019 U.S. Dist. LEXIS 45238
   (C.D. Cal. Mar. 18, 2019) ................................................................................ 14

*Gajo v. Brand*,
   No. 17-cv-00380-EMC, 2017 U.S. Dist. LEXIS 88404
   (N.D. Cal. June 8, 2017) ..................................................................................... 9

*High Desert, Inc. v. Yost*,
   92 F.3d 814 (9th Cir. 1996) ................................................................................. 9

*Hung v. Lowe's Home Centers*,
   No. CV 18-10545 SJO, 2019 U.S. Dist. LEXIS 168825
   (C.D. Cal. May 1, 2019) ................................................................13, 14, 15, 17

*InCom Corp. v. Walt Disney Company*,
   No. 15-cv-3011-PSG, 2016 U.S. Dist. LEXIS 71319
   (C.D. Cal. Feb. 4, 2016) .................................................................................... 11

*Injen Technology Co. v. AF Dynamic*,
  No. 2:18-cv-05910-RGK-SS, 2018 U.S. Dist. LEXIS 224298
  (C.D. Cal. Oct. 18, 2018) ...................................................................11, 12

*Johnson v. Mammoth Recreations*,
  975 F.2d 604 (9th Cir. 1992).........................................................15, 16, 18

*Lucent Technologies, Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 20

*Murphy Tugboat Company v. Shipowners & Merchants Towboat Co.*,
  467 F. Supp. 841 (N.D. Cal. 1979)........................................................ 8, 9

*North Star Innovations, Inc. v. Kingston Technology Company, Inc.*,
  No. SA CV 17-01833-DOC, 2018 U.S. Dist. LEXIS 106018
  (C.D. Cal. May 7, 2018) ........................................................................... 12

*O'Connor v. Uber Technologies, Inc.*,
  No. C-13-3826 EMC, 2013 U.S. Dist. LEXIS 171813
  (N.D. Cal. Dec. 5, 2013) ........................................................................ 8, 9

*Oakley, Inc. v. Trillion Top Co. Ltd. LLC*,
  No. SACV 17-01580 AG (JCGx), 2018 U.S. Dist. LEXIS 234460
  (C.D. Cal. June 4, 2018)......................................................................13, 14

*Papasan v. Allain*,
  478 U.S. 265 (1986)................................................................................... 7

*Parker v. Columbia Pictures Industries*,
  204 F.3d 326 (2d Cir. 2000) .................................................................... 16

*Philadelphia Indem. Ins. Co. v. IEC Corp.*,
  No. SACV 16-0295-DOC (AJWx), 2017 U.S. Dist. LEXIS 220003
  (C.D. Cal. July 27, 2017) ......................................................................... 16

*Puma SE v. Forever 21, Inc.*,
  No. CV17-2523 PSG Ex, 2017 U.S. Dist. LEXIS 211140
  (C.D. Cal. June 29, 2017).....................................................................13, 15

*Rite-Hite Corporation v. Kelley Company, Inc.*,
  56 F.3d 1538 (Fed. Cir. 1995) ................................................................. 19

*Siegler v. Sorrento Therapeutics, Inc.*,
  No. 3:18-cv-01681-GPC-NLS, 2019 U.S. Dist. LEXIS 23779
  (S.D. Cal. Feb. 12, 2019) ........................................................................... 8

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570 (Fed. Cir. 1995) ........................................................................ 10

*TeleSign Corp. v. Twilio, Inc.*,
    No. CV 16-2106 PSG, 2016 U.S. Dist. LEXIS 123516
    (C.D. Cal. Aug. 3, 2016) ................................................................ 10, 11, 12, 13

*United States Liability Insurance Company v. Haidinger-Hayes, Inc.*,
    1 Cal. 3d 586, 595 (1970) ............................................................................... 8

*United Tactical Systems, LLC v. Real Action Paintball, Inc.*,
    143 F. Supp. 3d 982 (N.D. Cal. 2015) ............................................................ 9

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ...................................................................... 9

**Statutes**

35 U.S.C. § 283 ......................................................................................................... 19

35 U.S.C. § 284 ......................................................................................................... 19

35 U.S.C. § 289 ......................................................................................................... 19

California Business and Professions Code § 17200 ............................................. 4, 6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 11

Fed. R. Civ. P. 15 ................................................................................... 5, 15, 16, 22

Fed. R. Civ. P. 16 ........................................................................................ 15, 16, 18

Local Rule 7-3 ............................................................................................ 17, 22, 23

### **MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants intelliArmor LLC[1] ("intelliArmor") and Adam Anderson ("Anderson") (collectively "Defendants") respectfully submit this Memorandum of Points and Authorities to support Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Under Federal Rule of Civil Procedure 12(b)(6) for Failure to State a Claim Upon Which Relief Can Be Granted.

### **SUMMARY**

This Court should dismiss Plaintiff Sanho Corporation's ("Plaintiff") First Amended Complaint (ECF No. 39, "the FAC") with prejudice and without leave to amend. From the beginning, Plaintiff has shown that it cannot be bothered with researching and abiding by pleading standards, and it has ignored or disregarded Defendants' numerous offers to correct pleading deficiencies without motion practice. Instead, Plaintiff has forced Defendants to go through the expense of preparing multiple motions to dismiss. This is especially problematic here because Plaintiff's possible recovery—even if its poorly pleaded claims prevail—is a fraction of Defendants' legal fees for just one motion to dismiss.

For defendant Anderson, the FAC makes no specific factual allegations supporting a plausible cause of action. Instead, the FAC only provides a few conclusory statements. The FAC makes no differentiation between the purported actions of Anderson and intelliArmor, and it fails to plausibly allege why Anderson is personally liable. The federal notice pleading standard is generous but, as the Supreme Court has repeatedly held, it does not license plaintiffs to litigate based on conclusory, generic allegations.

In addition, the Court should dismiss the FAC in its entirety for failure to state

---

[1] As of March 11, 2020, intelliArmor LLC converted from a California limited liability company to a Wyoming limited liability company. *See* Declaration of Adam Anderson ("Anderson Decl.") at ¶¶ 3-4, attached hereto as Exhibit 1. intelliArmor was never a "California corporation" as alleged in the FAC.

a claim. The FAC has one cause of action: infringement of a utility patent and four design patents. But, the FAC lacks the most fundamental facts supporting a legitimate patent infringement claim—that all of the accused products have all the elements of at least one claim of the asserted utility patent or that the accused products are identical or nearly identical to the asserted design patents. Instead, the FAC merely alleges the accused products infringe Plaintiff's patents; nothing more. The FAC provides no details supporting these allegations.

Finally, the Court should not grant Plaintiff leave to amend the FAC. Since the deadline for amending pleadings has passed, Plaintiff must show good cause to amend the FAC and none exists. Plaintiff carelessly elected to file an insufficient pleading without performing minimal and basic research to determine what was necessary for its cause of action. Defendants provided ample opportunity for Plaintiff to amend the Original Complaint and the FAC without motion practice, but Plaintiff refused. Moreover, Plaintiff appears to have a wrongful motive in pursuing this litigation. Despite Plaintiff threadbare and insufficient pleadings—and Plaintiff's refusal to serve infringement contentions under the Scheduling Order—Defendants have voluntarily stopped selling the accused products and offered to pay Plaintiff a settlement amount nearly double intelliArmor's profits on the accused products. Plaintiff cannot hope for a better result from this action, yet it continues pursuit of this litigation without justification or explanation.

The FAC should be dismissed with prejudice and without leave to amend.

## **STATEMENT OF ISSUES**

1.      Whether the FAC states a claim upon which relief can be granted with respect to Defendant Adam Anderson.

2.      Whether the FAC states a claim upon which relief can be granted as to all Defendants.

3.      Whether good cause exists for the Court to grant Plaintiff leave to amend the FAC.

## **STATEMENT OF FACTS**

This dispute began on October 2, 2019 when Plaintiff's counsel sent a cease-and-desist letter to intelliArmor demanding that it cease selling the Lynkhub 7-in-1 USB-C (the "7-in-1 HUB") and Lynkhub 3-in-1 USC-C (the "3-in-1 HUB") products. Anderson Decl. at ¶ 5. Plaintiff believed sale of those products infringed U.S. Pat. No. U.S. Patent Nos. D813,875 ("the 'D875 Patent") and D855,616 ("the 'D616 Patent"). *Id.* Anderson, in his capacity as CEO of intelliArmor, responded the next day saying that intelliArmor takes infringement claims seriously, that one product was being discontinued, asking for additional information, and offering to "connect [Plaintiff's counsel] with [intelliArmor's] legal counsel." *Id.* at ¶ 6.

Plaintiff's counsel ignored the notice of representation and offer to connect him with counsel for intelliArmor. Instead, Plaintiff's counsel continued contacting Anderson individually. *Id.* at ¶ 7. On October 14, 2019, Defendants responded to another inquiry from Plaintiff's counsel where Defendants requested additional information to "forward to our counsel so that they can get you a formal response." *Id.* Plaintiff's counsel responded the same day but provided no additional information, again ignored that Defendants were represented by counsel, and reiterated Plaintiff's demands. *Id.* Acting on behalf of intelliArmor, Anderson replied to this correspondence stating, "I think the best way to resolve this is for my counsel to deal with you direct." *Id.* at ¶ 8. Plaintiff's counsel again ignored the notice of representation and replied "We will not be waiting. We will proceed" with filing a lawsuit against intelliArmor. *Id.*

On October 16, 2019, Defendants emailed Plaintiff informing it that while they believed neither the 7-in-1 HUB nor the 3-in-1 HUB infringed the 'D875 and 'D616 Patents, Defendants discontinued selling them as Plaintiff demanded. *Id.* at ¶ 9. Five days later, Plaintiff's counsel acknowledged receipt of Defendants' October 16 email and thanked them "for confirming that you have discontinued to[sic] the products." *Id.*

Despite this, Plaintiff's counsel continued to contact Anderson directly with additional demands and lawsuit threats. *Id*. at ¶ 10. Plaintiff's counsel did so even though Anderson provided repeated notice that Defendants were represented by counsel, and Anderson requested Plaintiff's counsel speak with his counsel. *Id*.

A little over two weeks following this exchange, Plaintiff filed the Original Complaint in the Northern District of California naming both intelliArmor and Anderson as defendants. ECF No. 1. The Original Complaint alleged that Defendants' sales of the 7-in-1 HUB and the 3-in-1 HUB (1) infringed the 'D875 and 'D616 Patents; (2) infringed Plaintiff's unidentified "trade dress" in its HYPERDRIVE product; (3) violated California Business and Professions Code § 17200; and (4) unjustly enriched Defendants. *See generally, id*. While filed against Anderson, the Original Complaint made no allegations about Anderson specifically and failed to even allege how Anderson and intelliArmor are connected. *Id*.

After filing the lawsuit, Plaintiff's counsel continued the pattern of ignoring Anderson's request to speak with Defendants' attorney. On November 6, 2019, Plaintiff's counsel contacted Anderson personally to request Anderson to "voluntarily agree to accept service of the complaint and summons for this case." *Id*. at ¶ 10.

After Plaintiff filed the Original Complaint, Defendants' previous counsel attempted to negotiate a reasonable settlement. On December 3, 2019, Plaintiff sent its only settlement offer where it asked Defendants to stipulate to a "reasonable royalty" of $89 per unit—an amount approximately the same as the suggested retail sales price of Plaintiff's HYPERDRIVE products. *Id*. at ¶ 12. An $89 royalty would have resulted in a settlement payment approximately 4.3 times the total revenue intelliArmor realized from its sales from the 7-in-1 HUB and the 3-in-1 HUB. *Id*. An $89 royalty would have also been more than the retail sales price of some of Plaintiff's products. *Id*.

In January 2020, Defendants' previous counsel provided sales data for the 7-in-1 Hub and the 3-in-1 Hub showing total sales of $9,352.79 and total profit of

1   $110.94. *Id.* at ¶ 13. On January 27, 2020, Defendants' previous counsel provided a

2   counteroffer whereby Defendants agreed to pay Plaintiff $1000 (*i.e.*, over nine times

3   intelliArmor's total profit) and to not sell the 7-in-1 HUB or the 3-in-1 HUB. *Id.* at

4   ¶ 14. Plaintiff did not accept this offer and provided no counteroffer. *Id.*

5        With Defendants' deadline to respond to the Original Complaint on the horizon

6   and Plaintiff refusing to engage in reasonable settlement discussions, Defendants

7   retained undersigned counsel. Hoping to avoid unnecessary motion practice,

8   Defendants sent a letter to Plaintiff on March 16, 2020, informing Plaintiff that

9   Defendants intended to move to dismiss the Original Complaint for improper venue

10  and for failure to state a claim. Declaration of Andrew G. Strickland ("Strickland

11  Decl.") at ¶ 4, attached hereto as Exhibit 2. The March 16 letter offered to meet and

12  confer with Plaintiff, provided the factual and legal basis for the motion, and

13  requested a response by March 23, 2020—one week before Defendants' response was

14  due. *Id.* Having had no response by March 25, 2020, Defendants sent a follow-up

15  email to Plaintiff again offering to meet and confer. *Id.* at ¶ 5. Two days later,

16  Plaintiff's counsel sent a one sentence response stating, "We do not agree with your

17  March 16th letter." *Id.*

18       Understanding that Plaintiff believed that the causes of action in the Original

19  Complaint were adequately plead and that it believed venue in the Northern District

20  of California was proper, Defendants went through the expense and effort to draft and

21  file a motion to dismiss the Original Complaint on March 30, 2020. ECF No. 25. That

22  motion contained much of the same factual and legal arguments as the March 16

23  letter. *See id*; Strickland Decl. at ¶ 4, Ex. G. On March 30, 2020, Plaintiff also failed

24  to serve its infringement contentions and did not respond to Defendant's email the

25  next day asking to meet and confer on that issue. *Id.* at ¶¶ 6-7.

26       Instead of responding to the first motion to dismiss or amending the Original

27  Complaint under Fed. R. Civ. P. 15(a)(1)(B), Plaintiff asked Defendants to agree to a

28  stipulation to transfer the case to this District—which Plaintiff could have done before

Defendants filed its first motion to dismiss. *See* ECF No. 26; Strickland Decl. at ¶ 8. After the case was transferred to this District, counsel for Defendants notified Plaintiff's counsel of their intent to refile the first Motion to Dismiss. *Id*. at ¶ 10. On April 22, 2020, the parties conducted a brief meet-and-confer wherein Plaintiff's counsel agreed to file a First Amended Complaint by the May 18, 2020 deadline to amend pleadings. *Id*. at ¶ 11.

On May 18, 2020, Plaintiff filed the FAC. *See* ECF No. 39. The FAC dropped the trade dress infringement, the California Business and Professions Code § 17200, and unjust enrichment claims and only states a cause of action for patent infringement. *See id.* The FAC alleges:

- that in addition to the '616 and 'D875 Patents, Plaintiff is also the assignee of U.S. Pat. Nos. 10,572,429 ("the '429 Patent"); D844,618 ("the 'D618 Patent); and D807,290 ("the 'D290 Patent) (*see id*. at ¶ 12);

- the 7-in-1 HUB, the 3-in-1 HUB, and the Lynkhub MacBook Pro USB C HUB ("the MacBook Pro HUB") infringe the '429, 'D616, 'D875, and 'D618 Patents (*see id*. at ¶ 14); and,

- the Lynkhub Media 4 in 1 USC C Hub ("the 4-in-1 HUB") and the Lynkhub+ 5 in 1 USC C HUB ("the 5-in-1 HUB") infringe the 'D290 Patent (*see id*. at ¶ 15).

The FAC, however, does not provide specific allegations or details of Defendants' alleged infringement other than identifying patents, naming Defendants' accused products, and that Defendants "made, used, sold, and offered to sell" the accused products. *See id* at ¶¶ 14, 15, 18. Nowhere does the FAC identify how the accused products satisfy each and every element of at least one claim of any asserted patent. *See generally, id*. The FAC is silent on the components of the accused products, how the accused products function or operate, or the asserted patents' claims. *See generally, id*. The FAC provides neither a comparison of the accused products to any claimed design nor any allegations that an ordinary observer would be deceived by the similarity of the accused products to any claimed design. *Id*. The FAC provides no claim charts, photographs, textual descriptions, or any exhibits or

1  information comparing the accused products to the designs claimed by the asserted
2  patents.

3      The FAC continues to name Anderson as a defendant. *Id*. The FAC—like the
4  Original Complaint before it—says virtually nothing about Anderson himself or
5  factual allegations regarding his role in the purported wrongdoing alleged. *Id*. The
6  FAC simply states that Anderson is residing in California, is the "CEO of
7  INTELLIARMOR and INTELLIARMOR LLC," and concludes, without factual
8  support, that Anderson "authorized or directed the infringing conduct." *Id*. at ¶ 9.
9  Although the FAC directs its cause of action to "Defendants," it at no point
10 differentiates between intelliArmor and Anderson, and the FAC uses the term
11 "Defendants" without specifying to whom the allegations are directed. *See generally,*
12 *id*. The FAC does not specifically allege wrongdoing by Anderson and does not
13 explain why the alleged actions of intelliArmor should be attributed to Anderson. *Id*.
14 The FAC's single allegation of patent infringement does not mention Anderson at all,
15 and the FAC identifies no specific act of Anderson related to the alleged conduct.

16                              **ARGUMENT**

17      Groundless claims should be exposed "at the point of minimum expenditure of
18 time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S.
19 544, 558 (2007) (citation omitted). A complaint must provide more than labels and
20 conclusions, and a formulaic recitation of the cause of action will not do. *See id*. at
21 555 (citations omitted). "[C]ourts 'are not bound to accept as true a legal conclusion
22 couched as a factual allegation.'" *Id*. (quoting *Papasan v. Allain*, 478 U.S. 265, 286
23 (1986)).

24      "To survive a motion to dismiss, a complaint must contain sufficient factual
25 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"
26 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A
27 claim has facial plausibility when the plaintiff pleads factual content that allows the
28 court to draw the reasonable inference that the defendant is liable for the misconduct

1   alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Fayer v. Vaughn*, 649 F.3d
2   1061, 1064 (9th Cir. 2011) ("Although factual allegations are taken as true, we do not
3   assume the truth of legal conclusions merely because they are cast in the form of
4   factual allegations.") (internal quotations omitted). A plaintiff must not merely allege
5   conduct that is conceivable; "[w]hen a complaint pleads facts that are merely
6   consistent with a defendant's liability, it stops short of the line between possibility
7   and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

8   **I.    THE COURT SHOULD DISMISS ALL CLAIMS AGAINST ADAM**
9   **ANDERSON**

10   Courts have consistently stated that a corporate executive will not be held
11   vicariously liable, merely by virtue of his office, for the torts of his corporation.
12   *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co*., 467 F. Supp. 841, 852
13   (N.D. Cal. 1979); *Siegler v. Sorrento Therapeutics, Inc*., No. 3:18-cv-01681-GPC-
14   NLS, 2019 U.S. Dist. LEXIS 23779, at *36 (S.D. Cal. Feb. 12, 2019). "Personal
15   liability must be founded upon ***specific acts*** by the individual director or officer."
16   *Murphy Tugboat*, 467 F. Supp. at 852 (emphasis added).

17   California law does not impose liability on corporate officers merely for their
18   role in a company. *O'Connor v. Uber Techs., Inc*., No. C-13-3826 EMC, 2013 U.S.
19   Dist. LEXIS 171813, at *63 (N.D. Cal. Dec. 5, 2013) (citing, *United States Liab. Ins.*
20   *Co. v. Haidinger-Hayes, Inc.*, 1 Cal. 3d 586, 595 (1970). The corporate form insulates
21   a company's officers from certain liabilities because the legal fiction of the
22   corporation as an independent entity—and the special benefit of limited liability
23   permitted thereby—is intended to insulate officers from liability. *Id*. at 61-62.
24   Personal liability must be founded upon specific "inherently wrongful conduct" by
25   the individual officer. *E.g.*, *Murphy Tugboat*, 467 F. Supp. at 852; *Siegler*, 2019 U.S.
26   Dist. LEXIS 23779, at *36; *Arcona, Inc. v. Farmacy Beauty, Ltd. Liab. Co*., No. 2:17-
27   cv-07058-ODW-JPR, 2018 U.S. Dist. LEXIS 47704, at *30-31 (C.D. Cal. Mar. 22,
28   2018).

Here, the FAC fails to state a claim for personal liability of Anderson. For Anderson, the FAC only alleges that he is "the corporate officer that authorized or directed the infringing conducted described herein," (ECF No. 39 at ¶ 9) and that "Defendant Anderson directed the infringement personally," (*id.* at ¶ 18) but nothing more. This is not enough. Both statements are mere conclusory allegations with no specific factual support. Nowhere does the Complaint allege specific facts about how Anderson "authorized or directed" the conduct alleged in the FAC. *See Comm. for Id.'s High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). This defect alone is fatal—there is no plausible claim for relief against Anderson without pleading factual allegations of personal liability. *See Murphy Tugboat*, 467 F. Supp. at 852 ("[p]ersonal liability [for torts] must be founded upon specific acts by the individual director or officer"); *see also, O'Connor,* 2013 U.S. Dist. LEXIS 171813, at *63 (a complaint merely "identifying [the corporate officers'] roles in the corporation and alleging that they were 'responsible' for pay practices and employment policies does not make it plausible that they were personally liable"); *United Tactical Sys., LLC v. Real Action Paintball, Inc*., 143 F. Supp. 3d 982, 1016 (N.D. Cal. 2015) (noting that claims against individual officers are insufficient where the plaintiff fails to provide allegations showing how the officers actually directed or participated in the infringement directly).

Personal liability for patent infringement requires sufficient evidence to justify piercing the corporate veil. *Al-Site Corp. v. VSI Int'l, Inc*., 174 F.3d 1308, 1331 (Fed. Cir. 1999). The "'corporate veil' shields a company's officers from personal liability for direct infringement that the officers commit in the name of the corporation, unless the corporation is the officers' 'alter ego.'" *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1313 (Fed. Cir. 2010). For patent infringement claims, absent factual allegations of alter ego, there is no basis for liability against an individual officer of an accused corporate infringer. *See Gajo v. Brand*, No. 17-cv-00380-EMC, 2017 U.S. Dist. LEXIS 88404, at *11 (N.D. Cal. June 8, 2017).

Here, the FAC is silent as to facts that would support an alter ego theory or justify piercing the corporate veil, which the Federal Circuit has held is required for personal liability to attach in patent infringement cases. *See Al-Site Corp*, 174 F.3d at 1331 ("Personal liability under § 271(a), however, **requires** sufficient evidence to justify piercing the corporate veil.") (emphasis added). Again, the FAC only alleges that Anderson is the CEO of intelliArmor, that he "authorized or directed the infringing conducted," and the he did so "personally." There is nothing in the FAC supporting an alter ego or veil-piercing theory of liability. The Court should dismiss Anderson from the complaint entirely.

## II.   THE COURT SHOULD DISMISS THE '429 PATENT INFRINGEMENT CLAIM

For patent infringement, plausibility requires the complaint to allege facts suggesting liability. *See Disc Disease Sols. Inc. v. VGH Sols., Inc*., 888 F.3d 1256, 1260 (Fed. Cir. 2018). Liability for patent infringement requires that "an accused product" have "every limitation [as] set forth in a claim . . . exactly." *Duncan Parking Techs., Inc. v. IPS Grp., Inc*., 914 F.3d 1347, 1360 (Fed. Cir. 2019) (citing *Southwall Techs., Inc. v. Cardinal IG Co*., 54 F.3d 1570, 1575 (Fed. Cir. 1995)). Regardless of whether a patent claim covers a system, apparatus, method, or process, a finding of infringement requires all elements to be present. *See Akamai Techs., Inc. v. Limelight Networks, Inc*., 797 F.3d 1020, 1022 (Fed. Cir. 2015). Thus, a complaint for patent infringement can only survive a motion to dismiss if, based on the complaint's allegations, it is plausible that the accused product contains all elements of at least one claim of the asserted patent. *See Disc Disease*, 888 F.3d at 1260; *TeleSign Corp. v. Twilio, Inc.*, No. CV 16-2106 PSG (SSx), 2016 U.S. Dist. LEXIS 123516, at *8 (C.D. Cal. Aug. 3, 2016) ("a plaintiff must still plausibly allege that a defendant's product or products practice all elements of at least one patent claim").

Historically, legal standards for pleading patent infringement were relaxed—before December 1, 2015, mere compliance with Form 18 of the Appendix of Forms

1  to the Federal Rules of Civil Procedure would survive a motion to dismiss. *See In re*

2  *Bill of Lading Transmission & Processing Sys. Patent Litig*., 681 F.3d 1323, 1333-35

3  (Fed. Cir. 2012). Form 18's requirements were minimal and only required "(1) an

4  allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a

5  statement that defendant has been infringing the patent 'by making, selling, and using

6  [the device] embodying the patent'; (4) a statement that the plaintiff has given the

7  defendant notice of its infringement; and (5) a demand for an injunction and

8  damages." *Id*. Form 18 required neither the "plaintiff to plead facts establishing that

9  each element of an asserted claim is met" nor "identify which claims it asserts are

10 being infringed." *Id*.

11     But, Form 18-style pleading is no longer sufficient. On December 1, 2015,

12 amendments to the Federal Rules of Civil Procedure abrogates Form 18. Since this

13 change "[c]ourts have ruled that the normal *Twombly* and *Iqbal* rules now apply with

14 equal force in the patent realm." *TeleSign Corp*, 2016 U.S. Dist. LEXIS 123516, at

15 *4 (collecting cases); *see also InCom Corp. v. Walt Disney Co*., No. 15-cv-3011-PSG,

16 2016 U.S. Dist. LEXIS 71319, at *6 (C.D. Cal. Feb. 4, 2016) (form 18 no longer

17 provides a safe harbor for pleading infringement); *Injen Tech. Co. v. AF Dynamic*,

18 No. 2:18-cv-05910-RGK-SS, 2018 U.S. Dist. LEXIS 224298, at *3-4 (C.D. Cal. Oct.

19 18, 2018). Therefore, "a plaintiff must include allegations sufficient to 'permit [the]

20 court to infer that the accused product infringes each element of at least one claim.'"

21 *TeleSign Corp*., 2016 U.S. Dist. LEXIS 123516, at *7 (quoting *Atlas IP, LLC v.

22 Exelon Corp*., 189 F. Supp. 3d 768, 775 (N.D. Ill. 2016), *aff'd sub nom. Atlas IP, LLC

23 v. Commonwealth Edison Co*., 686 F. App'x 921 (Fed. Cir. 2017)).

24     Failure of a complaint to adequately allege just one element of a patent claim

25 can lead to dismissal under Rule 12(b)(6). *See Drone Labs, LLC v. Dedrone Holdings,

26 Inc.*, No. 19-cv-01281-EMC, 2019 U.S. Dist. LEXIS 156186, at *11 (N.D. Cal. Sept.

27 12, 2019) ("Because [Plaintiff] has failed to adequately allege the 'transponder' claim

28 limitation . . . the Court finds that dismissal . . . is warranted."); *see also TeleSign*

1   *Corp.*, 2016 U.S. Dist. LEXIS 123516 (Plaintiff failed to plausibly allege the accused

2   product practiced all elements of at least one patent claim); *Atlas IP, LLC v. JEA*, No.

3   17-20243-CIV-ALTONAGA/Goodman, 2017 U.S. Dist. LEXIS 96577, at *16, *20

4   (S.D. Fla. June 21, 2017) (dismissing patent infringement complaint for failure to

5   state a claim when complaint failed to plausibly allege accused product did not have

6   all claim elements); *N. Star Innovations, Inc. v. Kingston Technology Co., Inc.*, No.

7   SA CV 17-01833-DOC (DFMx), 2018 U.S. Dist. LEXIS 106018, at *3 (C.D. Cal.

8   May 7, 2018). Even if a patent infringement allegation recites some elements of an

9   asserted claim and describes the accused product generally, it is insufficiently pled

10  and should be dismissed if it fails to tie the operation of the accused product to the

11  asserted claim. *See e.g.*, *TeleSign Corp.*, 2016 U.S. Dist. LEXIS 123516, at *8.

12      Here, the FAC not only fails to plausibly allege that the accused products

13  practice all elements of at least one patent claim, the FAC mentions no claim, or the

14  elements of any claim, of the '429 patent. *See generally* ECF No. 39. The FAC merely

15  concludes that certain Defendants' products infringe the '429 Patent with no factual

16  assertions, description, or explanation. *Id.* Nowhere does the FAC allege what

17  elements of the patent are infringed or how; there is simply no mention of claims or

18  claim elements. *Id.* A plausible allegation of patent infringement requires a complaint

19  to allege, at minimum, that the accused product or process practices every element of

20  at least one claim of the asserted patent. *Disc Disease*, 888 F.3d at 1260; *TeleSign*

21  *Corp.*, 2016 U.S. Dist. LEXIS 123516, at *7. Yet, in the FAC, Plaintiff simply

22  concludes that infringement without satisfying the *Disc Disease* standard.

23      In *Injen Tech. Co.*, this Court held that a "plaintiff cannot simply identify some

24  products and recite the elements of patent infringement, absent any factual support,

25  to state a plausible claim to relief." 2018 U.S. Dist. LEXIS 224298, at *6. A complaint

26  merely copying statutory language and alleging that "[b]y making, using, offering to

27  sell, selling and/or importing into the United States a version of [Plaintiff's patents],

28  Defendants have infringed . . . ." is not adequately pled. *Id.*; *See also Elec. Scripting*

1  *Prod., Inc. v. HTC Am. Inc.*, No. 17-cv-05806-RS, 2018 U.S. Dist. LEXIS 43687, at
2  *17 (N.D. Cal. Mar. 16, 2018) (dismissing complaint when plaintiff made "no attempt
3  at all to walk through the elements of the claims at issue, nor provide any information
4  about" the accused product). Here, the FAC includes even less than what was
5  insufficient in *Injen Tech. Co.* and *Elec. Scripting Prod.*

6        Failure of a complaint to show even one missing element is fatal. *See e.g.*,
7  *Drone Labs*, 2019 U.S. Dist. LEXIS 156186, at *11 (granting motion to dismiss when
8  complaint failed to allege that accused product practiced just one element of an
9  asserted patent claim); *TeleSign Corp.*, 2016 U.S. Dist. LEXIS 123516, at *8 (a
10 plaintiff must plausibly allege that a defendant's product or products practice all
11 elements of at least one patent claim). The FAC not only fails to allege that each and
12 every element of any claim of the '429 Patent is met, it fails to address the elements
13 at all. The Court should dismiss the '429 Patent infringement allegations.

14 **III. THE COURT SHOULD DISMISS THE 'D616, 'D875, 'D618 and 'D290**
15     **PATENT INFRINGEMENT CLAIMS**

16       At a high level, a well-pleaded complaint for design patent infringement does
17 not differ from a well-pleaded complaint for utility patent infringement—the
18 allegations must satisfy *Twombly/Iqbal* and state a claim to relief that is plausible on
19 its face. *See Hung v. Lowe's Home Ctrs.,* No. CV 18-10545 SJO (JEMx), 2019 U.S.
20 Dist. LEXIS 168825, at *3 (C.D. Cal. May 1, 2019). But, because "design patents
21 don't necessarily have 'elements' to practice," *Disc Disease*'s requirement that a
22 complaint allege an accused product or process practices every element of at least one
23 claim of the asserted patent is an imperfect fit. *See Oakley, Inc. v. Trillion Top Co.*
24 *Ltd. LLC*, No. SACV 17-01580 AG (JCGx), 2018 U.S. Dist. LEXIS 234460, at *8
25 (C.D. Cal. June 4, 2018).

26       At minimum, a viable design patent infringement claim must, among other
27 things, "state the means by which the defendant allegedly infringes." *Puma SE v.*
28 *Forever 21, Inc.*, No. CV17-2523 PSG Ex, 2017 U.S. Dist. LEXIS 211140, at *5-6

1   (C.D. Cal. June 29, 2017). Courts determine infringement of a design patent under

2   the "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678

3   (Fed. Cir. 2008). Under the ordinary observer test, the design of an accused product

4   infringes if it is "viewed as so similar to the claimed design that [an ordinary observer]

5   familiar with the prior art would be deceived by the similarity . . . 'inducing him to

6   purchase one supposing it to be the other.'" *Id.* at 683.

7        Thus, a well-pleaded complaint for design patent infringement must include a

8   comparison of the accused product to the claimed design and an allegation that an

9   ordinary observer would be deceived by their similarity. *See, e.g.*, *Oakley*, 2018 U.S.

10  Dist. LEXIS 234460, at *7-9 ("the accused [design] must be compared to the claimed

11  design to determine whether the two designs are substantially the same") (internal

12  citations omitted); *Deckers Outdoor Corp. v. J.C. Penney Co., Inc*., 45 F. Supp. 3d

13  1181, 1186 (C.D. Cal. 2014) (to properly plead design patent infringement, a visual

14  comparison that "demonstrates a sufficient visual similarity as to at least render

15  infringement of the . . . [p]atent plausible" is required); *Five Star Gourmet Foods,*

16  *Inc. v. Ready Pac Foods, Inc.*, No. 5:18-cv-2436 DDP (KKx), 2019 U.S. Dist. LEXIS

17  45238, at *5-8 (C.D. Cal. Mar. 18, 2019) ("[i]n any event, the limited question on a

18  motion to dismiss is whether the claimed design and the accused product share

19  sufficient visual similarity to plausibly allege design-patent infringement.").

20       In *Hung* this Court granted a motion to dismiss a complaint alleging design

21  patent infringement claim because "Plaintiff ha[d] not stated the manner in which

22  Defendants' products violate the patent that [it] purportedly owns." 2019 U.S. Dist.

23  LEXIS 168825, at *4. This Court explained:

24       Plaintiff has not given the court exhibits or aids comparing the infringing
         products and Plaintiff's patented product. Instead, Plaintiff provides a few
25       poor quality photographs of the infringing products. Moreover, although
         Plaintiff cites to the sale of the Lux Headlamp on Amazon.com, Plaintiff
26       never provides images comparing this product to Plaintiff's patent.
27       Without a description of the purported infringement taking place, the
         Court must dismiss the SAC.
28

1     *Id.*, at \*4-5.

2       Here, the FAC falls woefully short of the minimal standard to adequately plead

3 design patent infringement. Nowhere does it "state the means by which the defendant

4 allegedly infringes." *Puma,* 2017 U.S. Dist. LEXIS 211140, at \*5-6. While the FAC

5 includes the conclusory statement that "Defendants and/or its agents had advertised,

6 sold, and offered for sale products embodying the [alleged] patents" (ECF No. 39 at

7 ¶ 13), "Plaintiff has not given the court exhibits or aids comparing the infringing

8 products and Plaintiff's patented product." *See Hung*, 2019 U.S. Dist. LEXIS 168825,

9 at \*4. The FAC provides nothing—no pictures, exhibits, description, side-by-side

10 comparisons, or allegations about where and how Defendants allegedly sold the

11 accused products —to plausibly support an allegation that an ordinary observer would

12 be deceived between the claimed designs and the accused products. This Court

13 granted a motion to dismiss in *Hung* when the plaintiff there provided more than what

14 the FAC provides here. *See id.* ("a few poor quality photographs of the infringing

15 products" and allegation of sales on Amazon.com insufficient to survive a motion to

16 dismiss). "Without a description of the purported infringement taking place, the Court

17 must dismiss" the FAC. *Id.*

18 **IV.  THE COURT SHOULD NOT GRANT LEAVE TO AMEND**

19       The deadline to amend pleadings was May 18, 2020. ECF No. 34 at 2. After

20 the deadline to amend pleadings, leave requires both (1) good cause for seeking

21 modification under Fed. R. Civ. P. 16(b)(4), and (2) satisfaction of the Rule 15(a)

22 standard. *Johnson v. Mammoth Recreations*, 975 F.2d 604, 608 (9th Cir. 1992). If the

23 movant fails to show good cause under Rule 16(b), the Court need not consider

24 whether the requirements of Rule 15(a) have been satisfied. *See id.* at 608 (a party

25 seeking to amend first shows good cause and, "then, if 'good cause' is shown, the

26 party must demonstrate that amendment was proper under Rule 15."). While federal

27 courts typically employ a liberal amendment policy, "after the deadline set in the

28 scheduling order has passed, [leave to amend is] judged under [Fed. R. Civ. P.] 16's

'good cause standard' rather than the 'liberal amendment policy' of FRCP 15(a)." *DRK Photo v. McGraw-Hill Glob. Educ. Holdings, LLC*, 870 F.3d 978, 989 (9th Cir. 2017).

Here, this Court should grant Defendants' motion to dismiss without leave to amend because no good causes exist under Fed. R. Civ. P. 16, and any further amendment would be premised on bad faith or wrongful motive in violation of Rule 15(a).

### A.   Plaintiff Cannot Meet the Good Cause Standard

The good cause "standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. The "focus of the inquiry is upon the moving party's reasons for seeking the modification. If that party was not diligent, the inquiry should end." *Id*. at 607. Moreover, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id*. A plaintiff given "ample notice of [a] defense" is expected to diligently act upon that notice in amending a complaint. *DRK Photo*, 870 F.3d at 989; *see Philadelphia Indem. Ins. Co. v. IEC Corp.*, No. SACV 16-0295-DOC (AJWx), 2017 U.S. Dist. LEXIS 220003, at *9 (C.D. Cal. July 27, 2017) (approvingly citing 2d Cir. case law "affirming the district court's denial of plaintiff's motion to amend for lack of 'good cause' because the plaintiff possessed all the information he needed to support a breach of contract claim before he filed suit") (citing *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000)).

Here, regarding Anderson, Plaintiff has received ***repeated*** notice of the FAC's deficiencies. *See* Strickland Decl. at ¶¶ 4-5, 10-11, 13-15. Before moving to dismiss the Original Complaint, Defendants' sent Plaintiff a letter detailing the factual and legal basis for the Original Complaint's deficiencies for Anderson, with a request to meet-and-confer. *Id*. at ¶ 4. Plaintiff refused and simply stated that that it did not agree. *Id*. at ¶ 5. Defendants have once before filed a motion to dismiss Anderson that has most of the same arguments this motion presents. *See* ECF No. 25. In response,

1    Plaintiff filed a FAC that merely added two conclusory statements about Anderson—
2    that he "authorized or directed the infringing conducted[sic] described herein" (ECF
3    No. 39, ¶ 9) and that he "directed the infringement personally." *Id.* at ¶ 18. On May 20,
4    2020, Defendants again notified Plaintiff that its allegations for Anderson were
5    insufficient. Strickland Decl. at ¶ 13, Ex. K. Plaintiff made clear during a May 22,
6    2020 meet-and-confer that it did not agree, would not agree to further amendments,
7    and provided no case law or facts supporting its position. *Id.* at ¶ 14.

8            No good cause exists for leave to amend the patent infringement claims either.
9    Two days after Plaintiff filed the FAC, Defendants notified Plaintiff that the FAC did
10   not adequately plead a claim for patent infringement and cited case law for its
11   position. *Id.* at ¶ 13, Ex. K. During the parties later meet-and-confer on May 22, while
12   Plaintiff had not taken the time to review the case law cited by Defendants and was
13   not prepared to discuss the issue despite having two-days' notice, Plaintiff indicated
14   that the FAC's patent infringement allegations were sufficient. *Id.* at ¶ 14. But,
15   Plaintiff asked for the weekend to further consider Defendants' position. *Id.* On May
16   26—*i.e.*, after the weekend—Defendants followed up, asked if Plaintiff's position
17   had changed, and bought this Court's decision in *Hung v. Lowe's Home Ctrs.*, 2019
18   U.S. Dist. LEXIS 168825, to Plaintiff's attention. Strickland Decl. at ¶ 15, Ex. L. By
19   May 28, 2020, Plaintiff had yet to indicate a change in its position, and Defendants
20   offered, again, to meet-and-confer by June 1, 2020, as that would be the last day to
21   do so under Local Rule 7-3. *Id.* Plaintiff responded that Defendants would have to
22   wait because "you do not control the schedule," and refused to meet-and-confer by
23   June 1, 2020. *Id.* While Plaintiff indicated it would be "happy to work with"
24   Defendants, it did not substantively respond to Defendants' position until the
25   afternoon of the last business day before this motion was due. *Id.* at ¶ 15, Ex. L; ¶ 18.

26           Defendants have gone above and beyond the necessary notice and meet-and-
27   confer requirements to allow Plaintiff to correct the many deficiencies of its
28   threadbare complaints. When preparing the Original Complaint and the FAC, Plaintiff

had an obligation to research the law regarding when a corporate officer can be held liable for the acts of the corporation and what was required of a patent infringement allegation. When Defendants identified the deficiencies in the Original Complaint and the FAC——which were detailed and provided in writing no less than three times— Plaintiff should have considered them in good faith. Yet, Plaintiff could not be bothered to meet-and-confer substantively (or at all) on the issue, and only barely attempted to address the deficiencies for Anderson in the FAC.

Having been given ample notice of the pleading requirements regarding Anderson and patent infringement, the deficiencies in the Original Complaint and the FAC, and Defendants' objections, Plaintiff's actions cannot be described as anything but careless. *See Chand v. Experian Info. Sols., Inc.*, No. 16-cv-6311-YGR, 2017 U.S. Dist. LEXIS 39926, at *6-7 (N.D. Cal. March 20, 2017) (discussing reprimand of counsel for careless pleading and refusal "to take action" when "put on notice of the problems with [a] specific complaint"). "The simple fact is that [Plaintiff's] attorneys filed pleadings . . . but failed to pay attention to the [information] they received. That is precisely the kind of case management that Rule 16 is designed to eliminate." *See Johnson*, 975 F.2d at 604.

There simply is no good cause to allow Plaintiff to continue to amend its complaint when it has carelessly pled causes of action, been repeatedly informed of that carelessness, and did not act diligently to correct it.

### B. Even if Plaintiff Could Show Good Cause, Any Future Amendment Would Be Premised on Plaintiff's Wrongful Motive.

Leave to amend may be denied under Rule 15 if "there is [] evidence in the record which would indicate a wrongful motive." *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). While Defendants do not entirely understand Plaintiff's motive, it can be nothing other than wrongful.

Since the beginning, Defendants have stopped selling the accused products. Anderson Decl. at ¶ 9; *See also,* Strickland Decl. at ¶ 16, Ex. M. Defendants have

provided sales figures for the accused products with a sworn declaration testifying to their accuracy. Strickland Decl. at ¶ 16, Ex. M. As explained in more detail below, those sales figures support a likely damages award much less than $5000, and Defendants made a settlement offer of $5000. *Id.* at ¶ 13, Ex. K. But, this was not good enough for Plaintiff. Instead, Plaintiff has stonewalled settlement by generally refusing to discuss it. When it has, Plaintiff has insisted on Defendants stipulating to unreasonable terms.

Background on the law of patent remedies is critical to understanding Plaintiff's unreasonableness. For both utility and design patents, a court may grant an injunction to stop the using, making, selling, offering to sell, or importing of an accused product. 35 U.S.C. § 283. Besides an injunction, a patent owner can also recover damages. 35 U.S.C. § 284. For both utility and design patents, damages are calculated based on a "reasonable royalty" on the infringer's sales of the accused product or the "lost profits" of the patent owner. *See Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1554 (Fed. Cir. 1995). "A reasonable royalty is based upon an established royalty, if there is one, or if not, upon the supposed result of hypothetical negotiations between the plaintiff and defendant." *Id.* For design patents only, a patent owner may elect to recover an infringer's profits from sales of the infringing device. 35 U.S.C. § 289. But, a patent owner cannot recover damages for both design patent infringement and utility patent infringement for sales of the same product; it must choose between a reasonably royalty, its lost profits, or the infringer's profits. *See Catalina Lighting, Inc. v. Lamps Plus, Inc*., 295 F.3d 1277, 1291 (Fed. Cir. 2002).

An injunction here is moot. Defendants voluntarily stopped selling the accused products of the Original Complaint (the 7-in-1 HUB and the 3-in-1 HUB) ***before*** Plaintiff filed the Original Complaint. Anderson Decl. at ¶ 9. Defendants voluntarily stopped selling the remaining accused products identified in the FAC (MacBook Pro HUB, the 4-in-1 HUB, and the 5-in-1 HUB) within one day of service of the FAC. Strickland Decl., at ¶ 16, Ex. M. Defendants agreed to a settlement term prohibiting

1  future sale of the accused products. Strickland Decl. at ¶ 13, Ex. K. While Defendants

2  do not believe Plaintiff's claims have merit, Defendants took these actions to avoid

3  an unnecessary, lengthy, and expensive litigation about products with minimal sales.

4  And, the sales are *minimal*. The accused products generated $21,630.64 in

5  revenue, gross profit of $2,702.64 (with cost of goods sold at $18,928), and

6  approximately $1,402.64 in net profit. Strickland Decl. at ¶ 16, Ex. M. Under the

7  design patent damages statue, the most Plaintiff can hope for is about $1,500. Most

8  of the accused products are sold at wholesale at a unit price at or below $22. *Id*. While

9  an appropriate reasonable royalty rate is beyond the scope of this motion, it is

10 reasonable to assume that should Plaintiff's suit prove fruitful, it would result in

11 damages lower than Defendants profits as Defendants would have been unwilling to

12 accept a royalty higher than its profits. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580

13 F.3d 1301, 1324 (Fed. Cir. 2009) ("the hypothetical negotiation or the 'willing

14 licensor-willing licensee' approach [for calculating a reasonable royalty] attempts to

15 ascertain the royalty upon which the parties would have agreed had they successfully

16 negotiated an agreement just before infringement began.").

17 Since Defendants will stop (and have stopped) selling the accused products,

18 and sales of the accused products are low, a quick settlement makes the most sense

19 and ought to be easy to achieve. Regardless of whether Plaintiff's allegations have

20 merit, Defendants have been willing to pay Plaintiff more than their profits in the

21 accused device solely to avoid unnecessary legal expenses. But, Plaintiff has

22 consistently thwarted settlement discussions by demanding unreasonable settlement

23 terms. *See, e.g.,* Anderson Decl. at ¶ 12.

24 In Plaintiff's only settlement offer, Plaintiff demanded that Defendants

25 stipulate to a "reasonable" royalty of $89 per-unit—a figure about the same as the

26 retail price of Plaintiff's similar product and an amount about four times the average

27 sales price of the accused products. *Id*. There is nothing reasonable about an $89 per-

28 unit royalty, and Plaintiff has never explained why it should be entitled to this.

In an attempt to resolve this on terms favorable to Plaintiff before litigation costs spiraled out of control, Defendants offered Plaintiff $5000—along with an agreement not to sell the accused products or challenge the validity of the asserted patents—within two days of service of the FAC. Strickland Decl. at ¶ 13, Ex. K. Plaintiff responded by refusing to discuss settlement unless Defendants "stipulate [absolutely] to patent validity and enforceability" (*id.*), a right that is not Defendants' to grant. *See Allen Archery, Inc. v. Browning Mfg. Co.*, 819 F.2d 1087, 1091 (Fed. Cir. 1987) (there is no "bar [for] someone charged with infringement from challenging the validity of patent claims that were upheld in a prior infringement suit to which it was not a party").

Defendants have offered to give Plaintiff everything it could hope to achieve, but Plaintiff refuses to even discuss settlement in good faith. Plaintiff has provided no reasonable justification for its position, articulated any good faith reason for this litigation to continue, or provided any basis in law or fact as to why Defendants settlement offers are unacceptable.

Plaintiff's bad faith and apparent wrongful motive is not limited to settlement negotiations—it extends to other aspects of this litigation as well. Before suing, Plaintiff's counsel repeatedly ignored Mr. Anderson's requests that Plaintiff's counsel speak with Defendants' counsel. Anderson Decl. at ¶¶ 6-10. Plaintiff's counsel has consistently refused to meet-and-confer not only on settlement issues but also on issues related to Defendants' two motions to dismiss. On the one occasion where Plaintiff did agree to meet-and-confer, it was only interested in demanding immediate deposition dates for Mr. Anderson and was not prepared to discuss Defendants' agenda items such as an extension of time to respond to the FAC, proposing a new schedule, settlement or the present motion to dismiss. Strickland Decl. at ¶ 14.

As another example, before moving to dismiss the Original Complaint, Defendants prepared a detailed letter outlining the issues in the Original Complaint with their offer to meet-and-confer. *Id.* at ¶ 4, Ex. G. Defendants took the time to do

so because an amendment could potentially correct the issues, Plaintiff could have easily amended under Fed. R. Civ. P. 15, and Defendants did not want to incur the expense of motion practice. *Id.* Plaintiff's only response was that it did not agree. *Id.* at ¶ 5. Yet, it obviously did—instead of responding to the motion to dismiss Plaintiff (1) sent Defendants a stipulation to transfer the case to this Court; and (2) later filed an amended complaint dropping almost all of the causes of action that were at-issue in the first motion to dismiss. *Id.* at ¶¶ 8, 11-12; *see also* ECF Nos. 1, 39. That Plaintiff explicitly stated it did not agree with Defendants, causing Defendants to go through the expense of preparing a motion to dismiss only to reverse course and later agree, shows that Plaintiff is looking opportunities to "run up the bill" on Defendants.

As yet another example of Plaintiff's bad faith and wrongful motive, under the Scheduling Order, Plaintiff was required to serve its infringement contentions on March 30, 2020. ECF No. 24 (Case Management Order before transfer); ECF No. 34 (present Scheduling Order). But, Plaintiff never served its infringement contentions, and never requested an extension. Plaintiff also never responded to Defendants' follow-up correspondence of April 1, 2020 offering to meet-and-confer. Strickland Decl. at ¶¶ 6-7. Plaintiff's failure to follow the Scheduling Order and serve infringement contentions was not addressed until Defendants provided invalidity contentions for the 'D875 and 'D616 Patents. Plaintiff's counsel's only explanation for failing to serve infringement contentions was that he "wasn't sure if we were doing contentions because we are in the Central District now." *Id.* at ¶ 9. This explanation does not withstand scrutiny—Plaintiff's infringement contentions were due before this case was transferred to the Central District Court. *Id.* at ¶¶ 6-7; ECF No. 24.

As one final example of Plaintiff's bad faith and wrongful motive, after numerous attempts to further meet-and-confer under Local Rule 7-3, Defendants finally received a substantive response from Plaintiff on June 5, 2020 at 1:26 PM Pacific time, the last business day before Defendants' response to the FAC was due. *See* ECF No. 38 ("Defendants must answer or otherwise respond to the operative

complaint no later than 20 days after May 18, 2020," *i.e.*, Sunday, June 7, 2020); Strickland Decl. at ¶ 18. This letter further shows that Plaintiff cannot be bothered to follow the rules of this Court and is taking actions intended to ensure that Defendants waste money on legal fees.

Plaintiff's June 5 letter shows a complete disregard for the rules of this Court. The letter suggests that it is an adequate substitute for a meet-and-confer ("we hereby respond to your meet and confer efforts as follows" (*id.* at ¶ 18, Ex. O)), but Local Rule 7-3 and this Court's Standing Orders suggest that meet-and-confer by letter is not appropriate. *See* Local Rule 7-3 (counsel shall "discuss thoroughly, preferably in person"); ECF. No. 33, Initial Standing Order for Judge Staton at ¶ 8.b ("Counsel should discuss the issues to a sufficient degree that if a motion is still necessary, the briefing may be directed to those substantive issues requiring resolution by the Court"). Moreover, as Defendants pointed out to Plaintiff in a May 28, 2020 email, "Local Rule 7-3 requires the meet-and-confer 'shall take place at least seven (7) days prior to the filing of the motion.' Thus, any further meet-and-confer on this issue must be completed by June 1." Strickland Decl. at ¶ 15, Ex. L. Sending an improper meet-and-confer substitute letter on the afternoon of the last business day before the motion is due, and nearly a week after the meet-and-confer deadline, is direct violation of Local Rule 7-3 and the Court's Standing Orders.

The timing of the letter also suggests bad faith. In a May 27 email to Plaintiff, Defendants informed Plaintiff that it could not wait longer than May 28 to conduct the meet-and-confer because "[w]e have to draft a motion and have a deadline approaching, and our time to respond is half way through as of today. We do not want to spend resources drafting a motion that may become moot. We did that once already, and we simply cannot waste resources given that my clients' legal bills have already exceeded the available damages in the case." *Id*. Plaintiff never indicated it would do anything other than oppose the motion to dismiss, and waited to the last moment to respond. Indeed, being fully aware of Defendants intent to file this motion to dismiss,

Plaintiff ambushed Defendants with its June 5 letter when Plaintiff was in the process of finalizing the present motion. *Id.* at ¶ 18. Plaintiff knew, or should have known, that by the time Defendants received the June 5 letter, this motion would have been complete and any change in Defendants' course would result in waste. It is clear from this, and from Plaintiff's behavior regarding the first motion to dismiss, that Plaintiff simply wants to make Defendants' defense as expensive as possible.

Plaintiff's motivations for continuing this case are not clear. But Plaintiff has demonstrated that it cannot be bothered with the details or effort of pursuing a good faith litigation. Both the Original Complaint and the FAC are so thin on detail they fail to satisfy even the most basic of pleading requirements. Even though Defendants provided an opportunity for Plaintiff to correct their deficiencies, Plaintiff refused. Plaintiff refused to follow the Court's Scheduling Order when it failed to serve infringement contentions, and it could not be concerned with correcting the issue timely. Plaintiff generally refuses or ignores requests to meet-and-confer on critical issues in violation of the Local Rules, and when asked to meet-and-confer on issues related to this motion, it was uninterested and unprepared to discuss Defendants' issues until the last minute (and then only by letter). Combine all these factors, and the only reasonable conclusion is that Plaintiff is pursuing this case with a wrongful motive. Plaintiff should not be allowed to coast along and continue doing less than the minimum required while Defendants are forced to mount a defense. The Court should not grant Plaintiff leave to amend the complaint once again so it may continue its uncontainable behavior.

## **CONCLUSION**

Defendants respectfully request that the Court grant this Motion to Dismiss and dismiss the FAC with prejudice and without leave to amend.

/ / /

1    Respectfully submitted this 5th day of June, 2020.

2

3                                         LEE & HAYES, P.C.

4
                                          By: */s/ Andrew G. Strickland*
5                                         Andrew G. Strickland, CA Bar No. 272364
                                          Email: andrew.strickland@leehayes.com
6                                         75 14th Street, Suite 2500
7                                         Atlanta, GA 30309
                                          Telephone: (404) 736-1925
8                                         Facsimile: (404) 815-1700

9
10                                        *Attorneys for Defendants*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on June 5, 2020, the foregoing document was

3 electronically filed with the Clerk of the court for the United States District Court,

4 Central District of California, using the Court's Electronic Case Filing (ECF)

5 system. The ECF system routinely sends a "notice of Electronic Filing" to all

6 attorneys of record who have consented to accept this notice as service of this

7 document by electronic means.

8

9                             LEE & HAYES, P.C.

10

11                             *By: /s/ Andrew G. Strickland*

12                             Andrew G. Strickland, CA Bar No. 272364

13                             Email: andrew.strickland@leehayes.com
75 14th Street, Suite 2500

14                             Atlanta, GA 30309
Telephone: (404) 736-1925

15                             Facsimile: (404) 815-1700

16                             *Attorneys for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28